CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
*f/c'ville*
OCT 21 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| EVAN HECHT, ET.AL., *Plaintiffs,* v. AMERICAN BANKERS INSURANCE CO., *Defendant.* | CIVIL ACTION NO. 3:04-CV-00098 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter comes before the Court on Defendant's Motion for Summary Judgment. The Court heard oral argument on this motion on October 11, 2005. For the reasons stated below, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

Plaintiff Evan Hecht ("Hecht") originally brought this case in the circuit court for the City of Charlottesville, and Defendant removed to federal court based on diversity jurisdiction. Plaintiff's claims center around the deterioration of the business relationship between Plaintiff and Defendant and the alleged breaches of contract that resulted. Hecht is the CEO of Plaintiff The Flood Insurance Company ("TFIA"), which served as a flood insurance agent for Defendant American Bankers Insurance Co ("ABIC"), as well as for other insurance companies.

The parties were apparently satisfied with their relationship until October of 2004, when Plaintiff discussed with ABIC his plans to hold a flood insurance seminar in Harris County,

1

Texas. ABIC initially agreed to sponsor the seminar, provide speakers, and assist in promotion of the seminar. After communicating with another of its general agents in the Houston area, John Griffin, however, ABIC asked Hecht not to market the seminar to certain other insurance agents in the area who placed their business with ABIC through Griffin. Hecht roundly refused this request, and the parties' relationship deteriorated.

ABIC ceased all participation in the seminar, and shortly thereafter informed Hecht and TFIA that it would no longer accept new business from them and that TFIA was "suspended" as an ABIC agent. Hecht and ABIC also ceased collaboration on the Mortgage Portfolio Protection Program ("MPPP"), a computer program the parties had developed expecting ABIC would use it to underwrite flood insurance.

Plaintiff's complaint in state court alleged three grounds for relief: (1) breach of contract arising from the breach of the agency agreement, the breach of ABIC's agreement to sponsor the flood insurance seminar, and the breach of the MPPP agreement; (2) conspiracy to injure TFIA's reputation in its trade or business under Virginia Code section 18.2-499; and (3) temporary and permanent injunctive relief to require ABIC to accept renewal premiums. The parties reached an agreement as to the equitable relief sought, and this issue is thus not before the Court. On September 26, 2005, Defendant moved for summary judgment on Plaintiff's other grounds for relief.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment should only be granted if, viewing the record as a whole in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.*, 763 F.2d 604, 610 (4th Cir. 1985). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted).

## B. Breach of Contract Claims

Plaintiff first claims that by refusing to accept new business from him, Defendant breached the agency agreement. Neither party disputes that Virginia law governs this case. Under Virginia law, interpretation of a contract depends upon the language of the contract itself; where the terms are clear and unambiguous, they must be accorded their plain meaning. *Bentley Funding Group v. SK&R Group*, 269 Va. 315, 329 (2005). Where an agreement is facially complete and clear, the court may not search for meaning beyond the instrument itself, *Ross v. Craw*, 231 Va. 206, 212-13 (1986), but the court must be guided by the intent of the parties as expressed by the instrument. *Va. Elec. and Power Co. v. N. Va. Reg'l Park Auth.*, 618 S.E.2d 323, 2005 Va. LEXIS 73 (Va. 2005). Hence, the court will consider the contract as a whole to determine the parties' intent. *Westmoreland-LG&E Partners v. Va. Elec. and Power Co.*, 254 Va. 1, 15 (1997). Virginia law treats claims of implied contracts or provisions with caution and does not allow a court to impose an implied contract on the parties in contravention of an express contract. *Acorn Structures v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988); *Va. Block Co. v. Va. Mut. Ins. Agency*, 16 B.R 771, 774 (Bankr. W.D. Va. 1982); *Royer v. Bd. of County Supervisors*, 176 Va. 268, 280 (1940). *See also L&E Corp. v. Days Inns of America*, 992 F.2d 55, 58 (4th Cir. 1993) (noting the refusal of Virginia courts to imply terms in a contract when the contract speaks

3

clearly on a matter); *Joyce v. Lincoln Nat. Life Ins. Co.*, 845 F. Supp. 353, 355 (E.D. Va. 1993) (same). With these principals in mind, the court turns to the contract between the parties.

In pertinent part, the agency agreement grants TFIA and its agents:

(A)uthority to solicit on the Company's behalf the lines and classes of insurance listed in this agreement, subject to the following terms and conditions:

**DUTIES OF THE AGENT**
1. Agent will solicit and submit applications and premiums due for Flood Insurance Policies . . .
3. . . . Agent shall, unless specifically otherwise directed, collect all premiums due and transmit such premiums to the Company . . .
4. Agent shall report all claims and claims related activity promptly to Company . . .

**COMPENSATION**
5. So long as Agent fully and faithfully complies with all of the terms and conditions of this agreement, the Company shall pay to Agent a monthly commission on net premiums written accordance with Paragraph 24. Net premiums written, for this Agreement, mean the gross premiums . . . on policies actually sold by the Agent and accepted by the Company less the Federal Policy Fee.

American Bankers Insurance Company of Florida, Agency Agreement, Flood, Ex. A to Pl.'s Mot. for J. (hereinafter "Agreement"). The Agreement also provides that ABIC shall have the power to cease offering any of the listed classes of insurance at any time and to unilaterally change TFIA's commission level with 90 days written notice. See Agreement ¶ 17.

TFIA argues that by refusing to accept new business, ABIC breached this agreement. Although the agreement nowhere provides that ABIC is required to accept insurance applications from TFIA, Plaintiff argues such a requirement is implied in the terms of the agreement giving TFIA authority to solicit insurance and guaranteeing compensation so long as TFIA complies with the agreement's terms. Given Virginia law and the nature of the relationship between the parties, this argument must fail. The express contract language imposes no such requirement, and

4

given the clear Virginia precedents in this area, the Court will not imply one. *See, e.g., Royer*, 176 Va. at 280. Further, such a requirement does not comport with the parties' intent. This was an arm's-length agreement between two businesses who presumably understood the terms of the contract. There is no dispute that TFIA acted as an agent for other entities besides ABIC and was not required to submit all its applications to ABIC. It would make little sense, then, for the Court to read into the Agreement a requirement that ABIC accept all the applications that TFIA did submit.

Plaintiff also argues that allowing ABIC to unilaterally decide to reject new business would render meaningless the provision allowing TFIA to solicit on ABIC's behalf for three years, as well as the provision regarding the escalating commission structure. Agreement ¶¶ 19, 24. These arguments also fail. The existence of a three year term for the agreement does not imply exclusivity or increased obligations in the parties' relationship. As noted above, the agreement allowed both parties considerable freedom, and the fact that this arrangement was to last for three years does not affect its substantive terms. Defendant's refusal to take new applications does effectively allow ABIC to decrease TFIA's commissions, which are conditioned on the amount of insurance sold. That fact, however, does not demonstrate that ABIC lacked authority to take that step. Indeed, the agreement specifies that ABIC can unilaterally change the commission structure after notice to TFIA. Agreement ¶ 17. Hence, Defendant's ability to refuse applications does not render the contract terms meaningless.

Finally, Plaintiff argues that Defendant itself admitted that the agreement had been terminated and that this statement is a judicial admission. For this argument, Plaintiff relies on statements referring to "termination" in the Defendant's Brief in Opposition to TFIA's

5

Case 3:04-cv-00098-NKM-BWC   Document 23   Filed 10/21/05   Page 5 of 10   Pageid#: 563

application for a preliminary injunction, as well as the Affidavit by Patricia Mulvania describing how Defendant "ended its relationship with Hecht." Pl.'s Mem. in Opp'n to Def's Mot. for Summ. J. 7.

The Court rejects this argument for several reasons. A district court has discretion to determine when a statement will be construed as a judicial admission. *See Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004); *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963). The Fourth Circuit, however, has generally ruled that a statement in an opposing party's brief does not create an issue of material fact sufficient to defeat summary judgment. *Northern Ins. Co of N.Y. v. Baltimore Bus. Commc'n.*, 68 Fed. Appx. 414, 421 (4th Cir. 2003) (holding that statements in memoranda, unlike pleadings, do not generally constitute binding judicial admissions); *Ryan v. Eli Lilly and Co*, 514 F. Supp. 1004 (D.S.C. 1981) (holding that briefs or memoranda of parties may not be considered to show what facts are in dispute); *Cole v. Ross Coal Co.*, 150 F. Supp. 808, 809-10 (D.W.Va. 1957) (holding that admissions in briefs are not properly considered on summary judgment because the briefs are not part of the record). Hence, the statements in the Defendant's Brief do not constitute a judicial admission.

Further, a review of Patricia Mulvania's Affidavit makes clear that despite her references to the end of the relationship between ABIC and Plaintiff, ABIC continued to comply with its responsibilities under the agency agreement. See Aff. of Patricia Mulvania, Ex. 6, Pl.'s Mem. in Opp'n to Mot. for Summ. J. ¶¶ 6-9. Hence, when placed in their proper, context her statements do not qualify as a judicial admission. In addition, Plaintiff has not alleged that ABIC has failed to pay it commission on the insurance applications it has accepted or otherwise failed to comply with the specific written terms of the contract. Plaintiff has thus been unable to show that a

genuine issue of material fact precludes summary judgment on the breach of the agency agreement question, and the Court grants summary judgment to the Defendant on this issue.

ABIC also seeks summary judgment on Plaintiff's claim that it breached the MPPP agreement. In support of its motion, Defendant points out that the parties never signed a formal written agreement regarding the MPPP, and that the agreement must be written to be valid under Virginia's Statute of Frauds. Virginia law requires a written contract or "some memorandum or note thereof" in order to enforce any agreement not to be performed within a year. Va. Code. § 11-2. According to the Plaintiff, the duration of the MPPP agreement was the same as the duration of the agency agreement: three years. Hecht Dep. 54-55. Hence, the agreement was one not to be performed within one year and falls under the Statute of Frauds.

ABIC never signed the "MPPP Flood Contract" that Plaintiff sent it. However, Plaintiff argues that the correspondence between the parties provides sufficient writings to satisfy the Statute of Frauds. Virginia law does not require the agreement to be embodied in a single writing, but rather allows a series of writings that contain the essential terms and are signed by the party to be charged thereby. *Reynolds v. Dixon*, 187 Va. 101, 106 (1948); *Drake v. Livesay*, 231 Va. 117, 120-21 (1986).

It appears that the only documents supporting the existence of an enforceable contract are printouts of the MPPP webpages, a press release, and emails discussing elements of the computer program and ABIC's work to bring it into legal compliance, as well as reviewing proposed advertisements and the website for the program. These emails do not state any of the essential terms of the contract and thus are insufficient to meet the Statute of Frauds. Similarly, the press release issued by Plaintiff advertising its partnership with ABIC offers no actual evidence that

7

Defendant intended to be bound by any agreement. See Ex. A, part 2, Def's Mem. in Supp. of Mot. For Summ. J. Neither do the web page printouts evince any of the essential terms of the agreement or any intent by ABIC to be bound.

Plaintiff suggested in oral argument, however, that there had been partial performance of the MPPP agreement because some insurance policies were issued through the MPPP program before the parties' relationship deteriorated. Assuming *arguendo* that this constitutes partial performance, it would still not take the parties outside the reach of the Statute of Frauds. Partial performance does not prevent the Statute's application in damages actions for breach of contract. *See Marchiafava, Inc. v. Haft, et.al*, 777 F.2d 942 (4th Cir. 1985); *11401 Corp. v. Moses and Assoc.*, 14 Va. Cir. 144 (1988). Hence, the Court finds that there was no enforceable MPPP agreement between the parties, and thus that Defendant is entitled to summary judgment on this issue.

Defendant also seeks summary judgment on Plaintiff's claim for breach of the seminar sponsorship agreement. Defendant argues that Plaintiff waived its claim in this regard by suggesting to ABIC that it withdraw as a sponsor of the seminar. The meaning of Plaintiff's statement to ABIC's representative is not as clear as Defendant suggests, however. Regarding ABIC's withdrawal from the sponsorship agreement, Hecht testified that he told Defendant, "This would not make me happy, but if you need to pull out of this seminar to save your relationship with Griffin, then you need to pull out of the seminar." Hecht. Dep. 88-89.[1] The

---

[1] The wording of this statement that Ron Abbene, ABIC's representative, testified to was apparently somewhat different, but not significantly so. Indeed, if the difference between the parties' testimony were significant, it would further counsel against summary judgment on this issue.

8

meaning of this statement is open to interpretation, and the Court cannot say as a matter of law that it qualifies as a waiver. Hence, on the issue of the breach of the seminar agreement, the Court denies summary judgment.

### C. Plaintiff's Conspiracy Claim

Defendant also argues that Plaintiff cannot state a viable business conspiracy claim. Under the Virginia Conspiracy Act, treble damages are available to a plaintiff harmed by two or more persons working in concert to willfully and maliciously injure him in his trade, business, or profession. Va. Code §§ 18.2-499, 18.2-500. To prevail, Plaintiff must establish concerted action, legal malice, and causally-related injury. *Virginia Vermiculite Ltd v. W.R. Grace and Co.-Conn.*, 144 F. Supp. 2d. 558, 601 (W.D. Va. 2001); *Simmons v. Miller*, 261 Va. 561, 578-79 (2001). The plaintiff need not prove that the conspirator's primary purpose is to injure him in his trade or business. *Id.* Although the plaintiff must only prove that one of the co-conspirators acted with an unlawful purpose or an unlawful means, *Virginia Vermiculite*, 144 F. Supp. 2d at 605, the statute nonetheless requires Plaintiff to show the two parties agreed or concerted together in such conduct. *Simmons*, 261 Va. at 578.

Here, the only evidence of conspiracy that Plaintiff can point to is a conversation between the ABIC's general agent in Texas, John Griffin, and ABIC. And the only description of this conversation Plaintiff offers is Hecht's statement of what Ron Abbene told him John Griffin said. See Hecht. Dep. at 87-88. Even if this statement were admissible, it does not establish the presence of a conspiracy to injure Plaintiff in his business; it merely shows that Griffin did not

9

want his agents invited to the seminar.[2] There is no evidence that Griffin suggested ABIC withdraw from the seminar, let alone agreed or concerted in that action. Indeed, it is clear from the facts that any conspiracy claim against Griffin himself would fail. Hence, there is no evidence that a conspiracy existed, and Plaintiff's claim necessarily fails on this point. Defendant is thus entitled to summary judgment on this claim as well.

Hence, the Court finds that there is no material question of fact and the Defendant is entitled to judgment as a matter of law as to Plaintiff's (1) claim for breach of the agency agreement, (2) claim for breach of the MPPP agreement, and (3) Virginia Conspiracy Act claim. However, the Court finds that Plaintiff's claim for breach of the sponsorship agreement presents a substantial question of fact that precludes summary judgment. Hence, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

An appropriate order shall issue this day.

ENTERED: _____
U.S. District Judge

October 21, 2005
Date

---

[2] In addition, Plaintiff's argument that Defendant's behavior was unlawful hinges on its argument that Defendant wrongfully breached its contracts with Plaintiff. But as the Court has found that there was no breach of the agency agreement and that there was no enforceable MPPP agreement to breach, Plaintiff's case for unlawfulness rests solely on Defendant's withdrawal from the sponsorship agreement. Plaintiff must prove the elements of the Virginia Conspiracy Act by clear and convincing evidence, *Feddeman and Co., C.P.A., P.C. v. Langan*, 260 Va. 35, 44 (2000), and Plaintiff's evidence on this point is tenuous.